# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**RICKY M. BROWN,**
**ADC #551211**                                                                    **PLAINTIFF**

**V.**                       **CASE NO. 4:13CV00529 JM/BD**

**JOHN RANDALL, et al.**                                                           **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.     Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr.  Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.  An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.  A copy will be furnished to the opposing party.

If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record.  By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## II. Procedural Background:

Plaintiff Ricky Brown, formerly a pre-trial detainee housed at the Faulkner County Detention Center, filed this lawsuit *pro se* under 42 U.S.C. § 1983. He raised a number of constitutional claims in his complaint. At the Court's request, he filed an amended complaint. The Court reviewed the amended complaint and addendum (#13, #25) and recommended that some of the claims be dismissed. (#27) The recommendation was adopted.[1] (#28) The remaining claim is Mr. Brown's claim that Defendants Randall, Vincent, Douglas, and Shock violated his due process rights by denying him telephone, television, commissary, visitation, and outdoor recreation privileges without a hearing. (#13 at pp. 2-3, #46 at p. 2, #48 at p. 2)

Mr. Brown has filed two motions for summary judgment. (#35, #48) Defendants have responded and also have moved for summary judgment. (#55, #56) Mr. Brown has responded to the Defendants' motion for summary judgment. (#60, #61, #62) For the

---

[1] Defendants move for summary judgment as to several claims that were not raised in the amended complaint. (#57 at pp. 5-6, 8-10) Mr. Brown acknowledges that he has dropped these claims, and the claims were not served. (#26, #27, #28, #62 at p. 1) Accordingly, those claims will not be addressed in this Recommendation.

reasons set out below, Mr. Brown's motions for summary judgment should be DENIED and Defendants' motion for summary judgment should be GRANTED.

## III. Facts:

Mr. Brown was incarcerated at the Faulkner County Detention Center ("FCDC") from July 30, 2013 until September 26, 2013. (#58-1 at p. 1) On August 26, 2013, he was charged with failing to obey the lawful orders of jail staff after refusing to remove a blanket that he had wrapped around himself. (#58-2) Corporal Michael Lee notified Mr. Brown of the disciplinary charge, and Mr. Brown admitted the rule violation. (#58-2) As a result of the infraction, Mr. Brown was placed in disciplinary segregation, which included a suspension of commissary and visitation privileges, for seven days. (#58-1 at p. 1, #58-2)

On August 28, 2013, there was an incident in Unit II of the FCDC. As a result of the incident, FCDC officials believed there was a security risk. (#58-1 at p. 1) Defendant Vincent temporarily suspended television, telephone, commissary, and visitation privileges in male housing in order to maintain order, regain control, and ensure compliance of the detainees that were involved in the incident. (#37 at p. 6, #58-1 at p. 1) Mr. Brown was in disciplinary segregation in Unit I of the FCDC and was not present in Unit II during the time of the incident. (#58 at p. 1, #58-1) Mr. Brown was transferred from disciplinary segregation to Unit II at 12:38 a.m. on August 29, 2013. (#44 at p. 2, #55 at p. 1)

Due to compliance within the facility, telephone and television privileges in Unit II resumed on August 29, 2013 at 12:40 p.m. (#37 at p. 6), and commissary and visitation privileges for all Unit II inmates resumed on August 30th at 1:10 p.m. (#35 at p. 1, #37 at p. 6)

In a separate incident, on or around August 17, 2013, three male inmates escaped from the FCDC and damaged the fence of the male housing recreation yard. (#58-1 at p. 2) Outside recreation in the male yard was temporarily suspended so that the fence could be repaired. (#58 at p. 2, #60 at p. 2) The male recreation yard did not reopen until after Mr. Brown was transferred from the FCDC. (#58 at p. 2, #60 at p. 2)

FCDC officials believed that escorting male detainees from male housing to the female recreation yard would create a risk of harm for officers, because detainees would have to be taken through an unsecured area of the facility. (#58 at p. 1, #58-1 at p. 2) Mr. Brown had access to the day room at FCDC during the time the outdoor yard was closed for repairs. (#58 at p. 2, #58-2 at p. 2)

IV. **Discussion:**

    A. **Standard**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving

party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the nonmoving party does not come forward with enough evidence to establish a necessary element of the case, the moving party is entitled to judgment as a matter of law. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

### B. Sovereign Immunity

Mr. Brown's claims for money damages from the Defendants in their official capacities are barred, of course, by sovereign immunity. It is settled law that a civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). Official-capacity claims against the Defendants for money damages should be dismissed based on sovereign immunity.

### C. Due Process

Mr. Brown complains that he was denied due process when he was transferred from disciplinary segregation in Unit I of the FCDC to Unit II on August 29, 2013. More specifically, Mr. Brown claims he was not given a due process hearing before being denied access to telephones and television until August 30th and commissary and

visitation until August 31st. He also claims he was punished without due process when he was denied access to outdoor recreation from August 17th until he was transferred from FCDC on September 26, 2013.

Assuming, without deciding,[2] that Mr. Brown was a pretrial detainee while at the FCDC, his claims are analyzed under the due process clause of the Fourteenth Amendment. In that situation, a pretrial detainee's constitutional rights are violated if his conditions of confinement amount to punishment. See *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." (Citation omitted)). "However, not every disability imposed during a pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). If a condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. *Bell*, 411 U.S. at 539.

The Seventh Circuit, in *Higgs v. Carver*, held:

> A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less. But no process is required if he is placed in segregation not as punishment but for managerial reasons. Suppose for example that the only vacant cell left in the jail was in the segregation ward

---

[2]For an in-depth discussion of whether a convicted person who has been paroled, like Mr. Brown, is considered a pretrial detainee see *Washington v. Byrd*, No. 4:11cv00008 JTR, 2012 WL 925148 (March 16, 2012).

> when a new prisoner arrived; placing him in that cell would be a managerial decision. Or suppose, . . . that a prisoner was placed under particularly restrictive conditions of confinement at the jail because he was considered a suicide risk. Again, no hearing would be required. Ditto if he was placed in segregation to protect himself from other prisoners, or to protect jail staff from his violent propensities. As long as the purpose was indeed preventive rather than a punitive one, he would not be entitled to notice and a hearing. . . . In none of these cases would a hearing be practicable, or even useful, because managerial decisions do not have the character of rulings applying legal standards to facts, the kind of rulings for which adjudicative hearings are designed.

286 F.3d 437, 438 (7th Cir.2002); see also *Askew v. Scott*, 4:09CV00058-JMMJJV, 2010 WL 39995 (E.D. Ark. Jan. 5, 2010) (quoting *Higgs*).

Here, Mr. Brown was moved out of segregation for managerial reasons. According to Mr. Brown, he was moved to Unit II after the August 28th incident to "make space" in disciplinary segregation for the inmates involved in the August 28th incident. (#35 at p. 1)  Mr. Brown was moved to Unit II for managerial reasons and not as punishment; thus, Defendants were not required to give Mr. Brown a hearing.

Further, Mr. Brown admits that he was already being disciplined on a rule infraction for which he did receive a due process hearing.  As a result of the rule infraction, Mr. Brown had been placed in disciplinary segregation, which included a suspension of commissary and visitation privileges for seven days.  (#58-1 at p. 1, #58-2) Because Mr. Brown was moved to Unit II, he was able to resume commissary and visitation privileges with the other inmates in Unit II on August 30th – three days before his disciplinary segregation expired.  (#37 at p. 6)  Further, he suffered loss of telephone and television privileges only from the early morning hours of August 29, 2013 until

7

12:40 p.m. the same day. Mr. Brown's conditions, as a result of his transfer to Unit II, were not much more restrictive than those of the general-population inmates. Given these undisputed facts, Mr. Brown's transfer to Unit II can not be characterized as punishment.

To the extent Mr. Brown claims that he was denied outdoor recreation time without due process from August 17, 2013, until he was transferred out of FCDC on September 26, 2013, this claim also fails. (#35 at pp. 1-2, #46 at p. 1, #48 at p. 2) Defendant Shock's decision to close the recreation yard to all male inmates, after three people escaped and damaged the security fence, was not to punish Mr. Brown but was a managerial decision reasonably related to legitimate security concerns. (#58-1 at p. 2)

Mr. Brown argues that he should have been offered yard call in the female recreation yard while the male yard was being repaired. While it is true that the FCDC had a female recreation yard that was not damaged in the escape incident, moving male detainees to that recreation area would have created another security risk because male detainees would have had to be taken through an unsecure area of the facility to reach the female yard, and that would have created a risk of harm for officers. (#58-1 at p. 2) Accordingly, the decision not to offer male inmates yard call in the female yard during the repair process was based on legitimate security concerns.

Further, during this time, Mr. Brown was not denied all exercise. He had access to the day-rooms in the FCDC, which offered him an opportunity to have some exercise indoors.[3] (#58-1 at p. 2)

Finally, Mr. Brown claims that on September 12, 2013, inmates were asked to clean the warehouse in exchange for yard call. (#37 at p. 16) As support for this claim, Mr. Brown points to a grievance form dated September 12, 2013, in which he wrote, "[T]oday we were told to clean up [and] we could have yard call." On the grievance form, Mr. Brown does not name the officer who allegedly told inmates to clean in order to receive yard call.

A defendant is liable under § 1983 only if he or she was directly and personally responsible for depriving a plaintiff of federally protected rights. To establish personal liability of a supervisory defendant, a plaintiff must allege, "specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (internal quotation marks and citation omitted).

---

[3]In the context of Eighth Amendment claims, the Eighth Circuit has held that inmates denied yard call for thirteen days or more do not have a valid Eighth Amendment claim. See *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) (holding that thirteen days without yard call was not an Eighth Amendment violation); *Rust v. Grammar*, 858 F.3d 411, 414 (8th Cir. 1988) (holding that the suspension of yard call for thirteen days did not constitute an Eighth Amendment violation); *Leonard v. Norris*, 797 F.2d 683, 685 (8th Cir. 1986) (holding that no out-of-cell exercise for fifteen days was not an Eighth Amendment violation).

Mr. Brown has not come forward with any evidence to support a claim that any of the Defendants were directly involved in instructing inmates to clean in order to receive yard call. Mr. Brown has not produced sufficient evidence to support a constitutional claim against the Defendants based on that alleged incident.

## IV. Conclusion:

The Court recommends that Ricky M. Brown's motions for summary judgment (#35, #48) be DENIED and that the Defendants' motion for summary judgment (#56) be GRANTED. All of Mr. Brown's claims should be DISMISSED, with prejudice.

DATED this 20th day of August, 2014.

_____
UNITED STATES MAGISTRATE JUDGE